IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| DAVID O. VIRIJEVICH, | ) |
|     Plaintiff, | ) ) ) |
| *vs.* | ) ) |
| TOWN OF CHESTERTON; DAVID D. CINCOSKI, in his official and individual capacities; PETER A. DUDA, in his official and individual capacities; and MICHAEL S. ORLICH, in his official and individual capacities, | ) ) ) ) ) ) ) ) |
|     Defendants. | ) ) |

Cause No. 2:23-cv-47

**COMPLAINT FOR DAMAGES AND DEMAND FOR TRIAL BY JURY**

Plaintiff David O. Virijevich, by counsel, for his *Complaint for Damages and Demand for Trial by Jury*, states as follows:

## I.   INTRODUCTION

1. This is an action brought by Detective Lieutenant David O. Virijevich ("Det. Lt. Virijevich") against Defendants Town of Chesterton, David D. Cincoski, Peter A. Duda, and Michael S. Orlich, after Defendants violated the First Amendment of the United States Constitution by retaliating against Det. Lt. Virijevich after he raised concerns internally and with Town officials about the potential criminal conduct of the then-chief of the Chesterton Police Department, and when nothing was done about these concerns, he brought his concerns to the Porter County Prosecutor and the Indiana State Police.

## II.    JURISDICTION

2. Jurisdiction of the Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, and 1343.

3. The Section 1983 claim is authorized and instituted pursuant to 42 U.S.C § 1983.

4. The employment practices alleged to be unlawful were committed within the jurisdiction of the United States District Court for the Northern District of Indiana, Hammond Division.

## III.    VENUE

5. Det. Lt. Virijevich is a resident of Porter County in the State of Indiana and is a citizen of the United States of America.

6. Defendant Town of Chesterton is located in Porter County, Indiana.

7. David D. Cincoski works in Porter County, Indiana, and is and was at all times relevant the Town Manager of the Town of Chesterton.

8. Peter A. Duda works in Porter County, Indiana, and is and was at all times relevant a member of the Chesterton Board of Police Commissioners.

9. Michael S. Orlich works in Porter County, Indiana, and is and was at all times relevant a member of the Chesterton Board of Police Commissioners.

10. The unlawful employment practices alleged herein arose in Chesterton, Indiana, which is located within Porter County, Indiana. Porter County is located in the Northern District of Indiana.

11. Thus, this cause of action is properly venued in the Northern District of Indiana under 28 U.S.C. § 1391(b), which allows for an action to be brought in the district where the defendant resides or in which the cause of action arose.

## IV.    PLAINTIFF

12. Det. Lt. Virijevich is a citizen of the United States, and is currently, as he was during all times relevant to this Complaint, a resident of Porter County in the State of Indiana.

13. Det. Lt. Virijevich resides in Kouts, Indiana.

## V.    DEFENDANTS

14. Defendant Town of Chesterton is located at 1490 Broadway, Chesterton, Indiana 46304, which is located within Porter County, Indiana.

15. At all times relevant to this action, Chesterton Police Department employed Det. Lt. Virijevich.

16. Chesterton Police Department is a Department and/or subdivision of Defendant Town of Chesterton.

17. Defendant David D. Cincoski resides in Chesterton, Indiana and at all times relevant engaged in the performance of his duties within Porter County, Indiana.

18. Peter A. Duda resides in Chesterton, Indiana and at all times relevant engaged in the performance of his duties within Porter County, Indiana.

19. Michael S. Orlich, resides in Chesterton, Indiana and at all times relevant engaged in the performance of his duties within Porter County, Indiana.

## VI.   STATEMENT OF FACTS

**A.   Det. Lt. Virijevich has been dedicated public servant, who has honorably served the Chesterton Police Department for more than 2 decades.**

20.   Det. Lt. Virijevich has honorably served the Chesterton Police Department for over two decades.

21.   Det. Lt. Virijevich has not had any significant disciplinary issues throughout his career with the Chesterton Police Department, which is a Department and/or a subdivision of Defendant Town of Chesterton.

22.   The Chesterton Police Department unceremoniously promoted Det. Lt. Virijevich from sergeant to lieutenant in 2022.

23.   The Chesterton Town Council appoints a three-member Chesterton Board of Police Commissioners ("Police Commissioners") to govern the Chesterton Police Department.

24.   According to the Town of Chesterton's website, the Police Commissioners "approve[] the various policies and standard operating procedures that govern the actions of a police department," and "[t]he primary purpose of the Police Commission is to serve as a policy setting board and disciplinary authority."

25.   The Police Commissioners are specifically "responsible for hearing all cases of officer misconduct and administering disciplinary actions ranging from suspensions to demotions and terminations."

26.   The Police Commissioners furthermore are responsible for appointing a police chief as well as "other employees that are necessary to carry on the work of the police department."

4

27. The Town Manager of the Town of Chesterton serves as "the administrative head and economic development coordinator of the town government."

28. The Town Manager specifically is impowered to "supervise and coordinate the operations of town departments."

**B.   In late 2020, David Cincoski hand-selected Nick Brown to succeed him as Interim Chief of the Chesterton Police Department.**

29. Then-Chief of the Chesterton Police Department, David Cincoski, handpicked then-Detective Nick Brown as his Assistant Chief in early 2020—despite Brown's lack of the requisite years of supervisory experience—with no competition or any application process.

30. On information and belief, Cincoski needed the Police Commissioners to change the rules, or Brown would have been deemed unqualified for the position of Assistant Chief.

31. On information and belief, Brown had multiple disciplinary issues involving his behavior with women throughout his more than 15-year career with the Chesterton Police Department. For example, he was demoted multiple times because of these and other performance issues.

32. Toward the end of 2020, Cincoski announced he was retiring as Chief and as a police officer to accept the job of Town Manager of Chesterton in January 2021.

33. Upon Cincoski's departure, Chesterton named Brown Interim Chief with no competition or application process for the job.

5

**C.     In February 2021, while he was cleaning out his desk, Det. Lt. Virijevich found an SD card with a voyeuristic video taken by Brown.**

34.     On February 8, 2021, Det. Lt. Virijevich was cleaning out the desk he had inherited from Brown when he located an SD card in a Department-owned camcorder that showed Brown making what clearly seemed to be a voyeuristic video.

35.     On February 9, 2021, Sgt. Charles Rinker and Det. Lt. Virijevich confronted Brown in the presence of Assistant Chief Dan Rocha.

36.     Although Det. Lt. Virijevich had expected Brown to take leave, resign, or ask Rocha to relieve him of duty pending an investigation, Brown fully continued serving as Chief of Police.

**D.     When Brown failed to resign or allow Rocha to relieve him of duties pending an investigation, Det. Lt. Virijevich continued reporting the issue down the chain of command.**

37.     When nothing changed with Brown's status over the next several days, on February 15, 2021, Det. Lt. Virijevich and Sgt. Rinker met with the individual who was third in charge of the Department, Lt. Joe Christian.

38.     Christian called Rocha in the presence of Det. Lt. Virijevich and Sgt. Rinker to inquire what steps Rocha had taken to deal "with this" situation, and Rocha answered "nothing."

**E.    Det. Lt. Virijevich went above and beyond his required duties by reporting this issue to a Police Commissioner, the Town Manager, the Indiana State Police, and the Porter County Prosecutor.**

39.     Later during a meeting on February 15, 2021, Rocha, Christian, Sgt. Rinker, and Det. Lt. Virijevich spoke with Police Commissioner Peter Duda.

6

40. Sgt. Rinker and Det. Lt. Virijevich described the contents of the video discovered by Det. Lt. Virijevich.

41. Duda said he had some calls to make and specifically said he would call the Town of Chesterton's attorney.

42. Later the same evening, Cincoski—now the Town Manager of Chesterton—called Rocha, Christian, Sgt. Rinker, and Det. Lt. Virijevich.

43. Cincoski was upset with the "optics" of the situation with Brown.

44. Cincoski instructed Rocha, Christian, Sgt. Rinker, and Det. Lt. Virijevich to place the SD card in a "sealed envelope on his [Town Manager's] desk" (unless they had "already" contacted the Indiana State Police), and he would "handle" the situation the following morning.

45. Rocha, Christian, Sgt. Rinker, and Det. Lt. Virijevich informed Cincoski that due to the criminal nature of the contents of the video, they would not comply with this request.

46. They also informed Cincoski that they had already called the Porter County Prosecutor because they expected the Town of Chesterton to improperly handle the situation to protect itself.

47. During this same meeting on February 15, 2021, Rocha, Christian, Sgt. Rinker, and Det. Lt. Virijevich spoke with the Indiana State Police.

48. Sgt. Rinker and Det. Lt. Virijevich also provided the Prosecutor of Porter County and the Indiana State Police with a copy of the SD card.

7

49. At the end of the night, Duda told Rocha, Christian, Sgt. Rinker, and Det. Lt. Virijevich that Brown was not going to be placed on leave and instructed him that they could all keep working as normal and expect for "legal" to get a hold of him in the morning.

**F. Despite these serious allegations of criminal conduct, complete with video evidence, Defendants allowed Brown to resign from his role as Chief on February 18, 2021 and to revert to his previous role as Corporal with the Department on February 21, 2021.**

50. Brown continued in his position as Chief, with Det. Lt. Virijevich as his subordinate, leaving Det. Lt. Virijevich in constant fear of retaliation either physically or verbally.

51. Subsequent to these reports, Brown began to closely surveil Det. Lt. Virijevich.

52. For example, although Brown previously had cut through the detectives' side of the building (where Det. Lt. Virijevich sat) to the Chesterton Fire Chief's office weekly, at most, Brown suddenly started passing through the detectives' side of the building numerous times a day while staring at Det. Lt. Virijevich.

53. Unlike before Det. Lt. Virijevich's report, Brown also began frequenting the same hallway as Det. Lt. Virijevich.

54. As Brown was still armed throughout this time, Det. Lt. Virijevich felt in fear of his safety.

55. Brown also attempted to contact Det. Lt. Virijevich numerous times and attempted to get Det. Lt. Virijevich to come to his office.

56. Det. Lt. Virijevich and Sgt. Rinker requested that Brown not speak to them alone during this period.

57. Finally, on February 18, 2021, Brown resigned from his position as Chief, but Defendants permitted him to revert to his previous rank of Corporal on February 22, 2021.

58. Defendants assigned Brown to work in a plain black car and instructed him not to interact with other Department employees or the public.

59. Thus, Defendants forced Det. Lt. Virijevich to work in the same office as Brown on a daily basis for nearly two weeks.

60. Bob Byrd then succeeded Brown as Interim Police Chief.

**G.  In April 2021, the Indiana State Police finally conducted interviews, but by this time, Det. Lt. Virijevich had been completely ostracized and retaliated against for his reporting Brown's criminal activity.**

61. In April 2021, Rocha, Christian, and Det. Lt. Virijevich gave statements to criminal investigators with the Indiana State Police.

62. By this time, both Det. Lt. Virijevich and Sgt. Rinker experienced daily ostracization and retaliation by other employees of the Department, which caused Det. Lt. Virijevich severe emotional distress and serious health issues.

63. Because of the Department's mishandling of the complaint against Brown, both Det. Lt. Virijevich's and Sgt. Rinker's reputations were negatively impacted as a result of their reports of Brown's conduct.

64. Cincoski also scrutinized and closely surveilled Det. Lt. Virijevich and Sgt. Rinker.

65. For example, Cincoski inexplicably asked a Porter Police officer to look into one of Sgt. Rinker's old cases and appeared at the detectives' side of the Chesterton Police Department numerous times and glared at Sgt. Rinker in an intimidating manner.

66. This ostracization and retaliation only increased after the Police Commissioners imposed a gag order on February 19, 2021, preventing anyone at the Department from discussing the situation.

67. The Town of Chesterton also attempted to subject Det. Lt. Virijevich and Sgt. Rinker to numerous investigations and interviews relating to their reports concerning Brown.

68. After providing multiple reports on this situation to Rocha, Brown, the Police Commissioners, the Indiana State Police, and a Town of Chesterton internal investigator, Interim Chief Byrd then told Det. Lt. Virijevich and Sgt. Rinker that he wanted to ask them "a few specific questions."

69. Det. Lt. Virijevich and Sgt. Rinker referred Interim Chief Byrd to these previous reports and asked that they not be subject to limitless investigations by the Town of Chesterton.

70. In April 2021, Interim Chief Byrd caught Det. Lt. Virijevich alone and handed him a business card, stating, "This is the State Trooper that does polygraphs in the area in case you need him."

71. Interim Chief Byrd inexplicably wrote the date he provided this business card to Det. Lt. Virijevich on the back of this business card.

72. This was a threat by Interim Chief Byrd that he would later order Det. Lt. Virijevich to submit to a polygraph after Det. Lt. Virijevich had already provided numerous other accounts internally and to the Indiana State Police.

73. Thus, the threat of an internal investigation against Det. Lt. Virijevich and Sgt. Rinker was constantly looming over them for several months.

74. In August 2021, despite no underlying health issues, Det. Lt. Virijevich suffered an aortic aneurysm, which required a multiple day stay in the ICU as well as a costly ambulance ride from Chesterton, Indiana to Northwestern Health in Chicago, Illinois.

75. This near-fatal health condition was the result of or was exacerbated by the intense stress created by the retaliation and lack of support from Defendants.

76. Det. Lt. Virijevich continues to closely monitor this condition and still must obtain annual scans to monitor his condition at a hospital rather than a closer outpatient imaging location.

77. Significantly, despite being well aware of the situation, neither the Police Commissioners nor anyone involved in the Town of Chesterton government has said anything about the matter to this day.

**H.    Defendants permitted Brown to resign from the Department in May 2021, days after the Indiana Supreme Court denied transfer in an appeal of a criminal conviction in which Brown was intricately involved.**

78. On May 13, 2021, the Indiana Supreme Court summarily denied a transfer petition of a Court of Appeals Opinion in *State v. Dillard*, which had affirmed a murder conviction despite Brown's notedly "bad judgment or negligence" in collecting a piece of evidence that an appellant-defendant later claimed was exculpatory.

79. One week later, Brown tendered his resignation from the Chesterton Police Department.

80. Shortly thereafter, another police department then hired Brown as a patrolman in July 2021. On information and belief, Brown received a positive recommendation from the Town of Chesterton.

81. On information and belief, Brown continues to apply to other positions with other departments and continues to receive positive references from the Town of Chesterton.

82. When a detective from another police department unexpectedly stopped by and inquired about why Brown had left the Chesterton Police Department, current Chief Tim Richardson instructed Det. Lt. Virijevich to refer the detective directly to Richardson.

83. Richardson further told Det. Lt. Virijevich that if he received any further inquiries to refer that person to Cincoski.

84. Both Det. Lt. Virijevich and Sgt. Rinker asked Byrd for a "no wrongdoing" letter confirming they did nothing wrong by blowing the whistle on the criminal activity of the then-Chief of Police.

85. Byrd responded, "That's not going to happen."

86. On information and belief, however, Byrd provided Rocca with a recommendation tantamount to a "no wrongdoing" letter when he applied to a new employer.

87. Det. Lt. Virijevich continues to work for the Chesterton Police Department, but the Town of Chesterton, including its employees and/or agents, continue to retaliate against him based on his reports concerning Brown.

88. As a direct and proximate result of the foregoing conduct:

   a. Det. Lt. Virijevich has suffered monetary damages;

   b. Det. Lt. Virijevich has suffered mental and physical anguish; and

  c. Det. Lt. Virijevich has incurred additional financial losses, including the costs associated with invoking his federally protected civil rights.

## VII. STATEMENT OF CLAIMS

### COUNT I
*(Retaliation in Violation of the First Amendment under 42 U.S.C. § 1983)*

89. Det. Lt. Virijevich incorporates the allegations of paragraphs 1 through 88 above and, in addition, states that Defendants retaliated against Det. Lt. Virijevich in violation of Section 1983.

90. Det. Lt. Virijevich engaged in protected activity when he went above and beyond the requirements of his duties as a police officer with the Chesterton Police Department as well as Department policies and reported the potential criminal activity of then-Chief Brown to Rocca, Christian, City Manager Cincoski, the Indiana State Police, and the Porter County prosecutor, amongst others.

91. Brown's potential violation of federal and/or state criminal laws is of political, social, and other concern to the community and was a subject of legitimate news interest of value and concern to the public.

92. Det. Lt. Virijevich's reports were thus an issue of public concern.

93. Det. Lt. Virijevich made this report as a private citizen rather than as part of his official job duties with the Chesterton Police Department.

94. Det. Lt. Virijevich's interest, as a private citizen, in providing reports on Brown's potential criminal activity—a matter of strong public concern—outweighs the Chesterton Police Department's interest, as an employer, in promoting the efficiency of the public services it performs through its employees.

95.     Defendants Town of Chesterton, David D. Cincoski, Peter A. Duda, and Michael S. Orlich, infringed on Det. Lt. Virijevich's First Amendment right to free speech when they retaliated against him because he reported these matters of public concern.

96.     Specifically, Town of Chesterton, David D. Cincoski, Peter A. Duda, and Michael S. Orlich initiated a campaign of harassment against Det. Lt. Virijevich to humiliate him, drive him to resign, and even break his health, in punishment for his reports about Brown's criminal activity.

97.     Defendants David D. Cincoski, Peter A. Duda, and Michael S. Orlich each initiated, cultivated, participated in, knew about, approved, and/or condoned this campaign of harassment against Det. Lt. Virijevich.

98.     This campaign of harassment was so severe it would have deterred a reasonable person from protected speech.

99.     As a result of these retaliatory actions, Det. Lt. Virijevich has suffered and will continue to suffer monetary damages and damages for mental anguish and humiliation unless and until the Court grants relief.

## VIII.  **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff David O. Virijevich prays for a judgment in his favor against Defendants, and prays that the following relief be awarded:

(a)     Order Defendants to make whole Det. Lt. Virijevich by providing compensation for future pecuniary losses resulting from the unlawful practices described above, including medical expenses, in amounts to be determined at trial.

(b)     Order Defendants to make whole Det. Lt. Virijevich by providing compensation for past and future non-pecuniary losses resulting from the unlawful practices complained of herein, including emotional pain, suffering,

inconvenience, loss of enjoyment of life, and humiliation in amounts to be determined at trial.

(c) Award Det. Lt. Virijevich the costs of this action including reasonable attorneys' fees and any such further relief as the Court may deem just, proper, and equitable.

(d) Grant such further relief as the Court deems necessary and proper in the public interest.

## IX. RESERVATION OF RIGHTS

Pursuant to the rules of pleading and practice, Plaintiff reserves the right to assert additional violations of federal and state law.

## X. JURY TRIAL

Plaintiff demands trial by jury on all issues so triable.

Respectfully submitted,

*s/ Courtney E. Endwright*
Sandra L. Blevins, Atty. No. 19646-49
Courtney E. Endwright, Atty. No. 30557-49

*Attorneys for Plaintiff David O. Virijevich*

BETZ + BLEVINS
One Indiana Square, Suite 1660
Indianapolis, Indiana 46204
Office: (317) 687-2222
Fax: (317) 687-2221
E-mail: sblevins@betzadvocates.com
cendwright@betzadvocates.com
litigation@betzadvocates.com