UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

| | |
|---|---|
| DAVID O VIRIJEVICH, <br><br> Plaintiff, <br><br> v. <br><br> CHESTERTON TOWN OF, et al., <br><br> Defendants. | Case No. 2:23-CV-00047-GSL |

## OPINION AND ORDER

This matter is before the Court on Defendant's Motion for Summary Judgment. [DE 35]. For the reasons below, the Court GRANTS Defendant's motion.

### I.    UNDISPUTED FACTS

On February 8, 2021, Plaintiff discovered a video that depicted potentially illegal conduct. [DE 50, ¶¶ 11–12]. At the time, Plaintiff was a Detective Sergeant for the Chesterton Police Department ("CPD"). [*Id.* ¶ 3]. He found the video on a CPD-owned camcorder, which was in a desk formerly occupied by Nick Brown—Interim Chief of the CPD. [*Id.* ¶ 11]. The video implicated Brown as being responsible for the potentially illegal conduct. [*Id.* ¶ 12].

The next day, Plaintiff reported the video to Sergeant Charles Rinker and Assistant Chief Dan Rocha. [*Id.* ¶¶ 13–14]. The three of them confronted Brown in his office and gave him a copy of the video. [*Id.* ¶ 15]. Plaintiff and Rinker left Brown's office right after handing over the video. [*Id.*]. Shortly after this meeting, Brown called Plaintiff back to his office to discuss an unrelated criminal case. [*Id.* ¶ 16]. But Plaintiff told Brown that he was not comfortable meeting with him alone. [*Id.*].

On February 15, 2021, Plaintiff and Rinker reported the video to Lieutenant Christian. [*Id.* ¶ 20]. Noting that they had raised the issue to both Rocha and Brown, they questioned whether anything had resulted from that prior report. [*Id.*]. With Plaintiff and Rinker present, Christian called Rocha, who confirmed that he had not taken any action yet. [*Id.* ¶¶ 21–22].

Later that day, Plaintiff, Rinker, and Christian met in person with Rocha. [*Id.* ¶ 23]. After the group reached a consensus on the next steps, Christian called Defendant Peter Duda—a Chesterton Police Commissioner—to inform him about the video involving Brown. [*Id.* ¶¶ 8, 23]. Following this conversation, Defendant Duda called Defendant David Cincoski— the Chesterton Town Manager—to explain the situation. [*Id.* ¶¶ 5, 24]. In turn, Defendant Cincoski briefed the Town Attorney, who told him to collect additional information and evidence. [*Id.* ¶ 25].

Along with escalating the situation to Defendant Duda, the group of Plaintiff, Rinker, Christian, and Rocha agreed to contact outside agencies. [*Id.* ¶ 26]. Rocha reported the video to both the Porter County Prosecutor and the Lowell District of the Indiana State Police. [*Id.* ¶ 26–27]. Defendant Cincoski originally intended on giving the original memory card of the video to the Town Attorney. [*Id.* ¶¶ 28–29]. But after further discussions with Christian and Rocha, he agreed that the best course of action was to transfer the memory card directly to the Indiana State Police. [*Id.* ¶¶ 30–33].

On February 18, 2021, Brown resigned from his position as Interim Chief, returning to his previous rank as Corporal. [*Id.* ¶¶ 37, 40]. The next day, Defendant John Orlich—another Chesterton Police Commissioner—issued a memorandum to the CPD, at the direction of the Town Attorney, stating that Brown had resigned from his position as Interim Chief and that officers were not to interfere with any ongoing investigations related to the matter. [*Id.* ¶¶ 38–

39]. Shortly thereafter, the town of Chesterton hired a third party—George Nelson, former Chief of Police—to conduct an internal investigation. [*Id.* ¶ 36]. On May 21, 2021, Brown resigned from the CPD. [*Id.* ¶ 44].

In April 2021, Plaintiff gave a statement to Indiana State Police regarding the discovery of the video and its contents. [*Id.* ¶ 42]. Sometime during or after the investigation, Plaintiff asked Bob Byrd—the new Interim Chief—for a "finding of no fault" with his conduct during the investigation. [*Id.* ¶ 51]. Byrd denied this request. [*Id.*]. Later, Byrd informed Plaintiff and Rinker that the Town was interested in conducting a new investigation—beyond Nelson's initial one. [*Id.* ¶ 53]. On April 21, Byrd handed Plaintiff a business card from an Indiana State Police trooper who performed polygraphs. [*Id.* ¶ 54]. But nothing came of these later events, and additional investigations and polygraphs were never discussed again. [*Id.* ¶¶ 53, 54].

During and after Nelson's initial investigation, Plaintiff claims that he was treated differently by Brown, Defendant Cincoski, and other employees of CPD and Chesterton. [*Id.* ¶¶ 46–51]. Brown passed through Plaintiff's work area more often. [DE 63, ¶ 117]. Defendant Cincoski acted less amiably toward Plaintiff.[1] [*Id.* ¶ 140]. Other employees gave Plaintiff the "silent treatment" and the "cold shoulder." [*Id.* ¶ 137].

In 2022, Plaintiff was promoted to the rank of Lieutenant. [*Id.* ¶ 45]. Rocha left him his new badge on his keyboard, rather than giving it to him at a public celebratory event. [*Id.* ¶ 55]. On February 23, 2024, Plaintiff was given a deficiency letter. [*Id.* ¶ 159].

---

[1] Plaintiff states specific factual allegations of Defendant Cincoski's conduct toward only Rinker. [DE 63, ¶¶ 138–39] (e.g., "would no longer say hi" and "would no longer look at Rinker in any way but with disdain in his eyes."). But he alleges that "Cincoski behaved similarly towards Virijevich." [*Id.* ¶ 140].

## II. LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant "bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions of" the evidence that "demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). To survive a properly supported motion for summary judgment, "the nonmoving party must present evidence sufficient to establish a triable issue of fact on all elements of its case." *McAllister v. Innovation Ventures, LLC*, 983 F.3d 963, 969 (7th Cir. 2020).

In deciding a motion for summary judgment, a court may "not weigh conflicting evidence, resolve swearing contests, determine credibility, or ponder which party's version of the facts is most likely to be true." *Stewart v. Wexford Health Sources, Inc.*, 14 F.4th 757, 760 (7th Cir. 2021). Instead, a court's only task is "to decide, based on the evidence of record, whether there is any material dispute of fact that requires a trial." *Id.* (internal citation omitted). If there is no genuine dispute of material fact, then summary judgment is appropriate, and the movant is entitled to judgment as a matter of law. *Id.*

## III. DISCUSSION

Plaintiff brings claims against Defendants for violations of his First Amendment rights, pursuant to 42 U.S.C. § 1983. [DE 1]. Defendants include three individuals—Town Manager David Cincoski, Commissioner Peter Duda, and Commissioner John Orlich—and one municipal entity—the Town of Chesterton. [*Id.*]. Plaintiff asserts that Defendants retaliated against him because he reported the potentially criminal activity by then-Interim Chief Brown. [*Id.*].

Defendants argue that the record lacks evidence to demonstrate any element of the prima facie case, and that Defendants are entitled to qualified immunity. [DE 35].

### A. Individual Defendants

"To make a prima facie showing on [his] First Amendment retaliation claim, [Plaintiff] must establish that '(1) [he] engaged in activity protected by the First Amendment, (2) [he] suffered a deprivation that would likely deter First Amendment activity in the future, and (3) the First Amendment activity was . . . at least a motivating factor in the Defendant[s'] decision to take the retaliatory action.'" *145 Fisk, LLC v. Nicklas*, 986 F.3d 759, 766 (7th Cir. 2021) (quoting *Woodruff v. Mason*, 542 F.3d 545, 551 (7th Cir. 2008)). The Court finds that Plaintiff failed to prove the second element of the prima facie case. This finding is determinative, so the Court will not address arguments relating to the other elements or to qualified immunity.

Plaintiff argues that the record evidence demonstrates that the individual Defendants were involved in a "campaign of petty harassment" against Plaintiff, which, "in gross, was substantial and palpably felt." [DE 49, page 12]. The alleged campaign of harassment involved: Defendants not immediately removing Brown from Plaintiff's work environment after Plaintiff reported Brown's potential illegal conduct [*Id.*]; Defendant Orlich issuing a memo to the CPD asking personnel not to interfere in the investigation relating to Brown [*Id.*]; ostracization by other members of the CPD during and following the investigation [*Id.* at 12–13]; alleged threats by new-Interim Chief Byrd of additional investigations [*Id.* at 13]; Byrd's denial of Plaintiff's request for a "no wrongdoing letter" [*Id.*]; and Plaintiff's eventual "forced move" to the Patrol Division [*Id.*].[2]

---

[2] For the sake of brevity, the Court discusses only the instances of harassment that the parties substantially briefed or raised at oral arguments. The Court reviewed and considered all factual allegations of harassment, even if not specifically referenced in this Order.

Any allegation of harassment by Byrd, Brown, or fellow officers at CPD does not support Plaintiff's claim against the individual Defendants. Under Section 1983, "a government official is only liable for his or her own misconduct." *Taylor v. Ways*, 999 F.3d 478, 493 (7th Cir. 2021) (quoting *Locke v. Haessig*, 788 F.3d 662, 669 (7th Cir. 2015)) (internal quotation marks omitted). In other words, the individual Defendants are only liable if they were personally involved in the harassment. *See id.* at 493–94. Personal involvement requires that they "know about the conduct and facilitate it, approve it, condone it, or turn a blind eye for fear of what they might see." *Id.* at 494 (quoting *Matthews v. City of E. St. Louis*, 675 F.3d 703, 708 (7th Cir. 2012)). Plaintiff does not offer any evidence to demonstrate that the individual Defendants knew of or turned a blind eye to the alleged harassment by Byrd, Brown, or other fellow officers at CPD.

The "delayed" removal or termination of Brown fails to demonstrate retaliatory conduct by Defendants. The Court is not aware of (and the parties fail to point to any) case law that delineates a compressed timeline by which state actors must take specific actions in response to an employee's complaint. Brown resigned from his post within ten days of Plaintiff's report. For the next three months, Brown was relegated to an isolated assignment while Defendants conducted an internal investigation. Subsequently, Brown resigned from the CPD. Facially, Defendants' response does not appear unreasonable to the Court, nor does it appear to be retaliatory by any measure. *See Douglas v. Reeves*, 964 F.3d 643, 646 (7th Cir. 2020) (applying an objective test: "whether the alleged conduct by the defendants would likely deter a person of ordinary firmness from continuing to engage in protected activity").

Defendant Orlich's memorandum—asking CPD personnel not to interfere into ongoing investigations relating to Brown's resignation—also fails to demonstrate retaliatory conduct.

6

Plaintiff called this memo a "gag order" in his briefing [DE 49, page 12], and at oral arguments, through his counsel [DE 62], implying that Defendant Orlich distributed the memo to silence or malign Plaintiff. He argues that this "gag order" contributed to his ostracization by personnel at the CPD. [DE 49, page 12]. The Court is not convinced that Defendant Orlich's memo demonstrates retaliatory conduct. First, the "gag order" does not reference Plaintiff in anyway, nor was it directed to only Plaintiff, but to all personnel at the CPD. The memo appears to be a reasonable action taken during an internal investigation—asking personnel not to interfere with the investigation. *See Reeves*, 964 F.3d at 646. Second, to the extent that CPD personnel ostracized Plaintiff because of the memo, Plaintiff does not provide evidence to demonstrate that Defendant Orlich knew of this ostracization or turned a blind eye to it. *See Ways*, 999 F.3d at 494.

Plaintiff also argues that his "demotion" is evidence of retaliatory conduct by Defendants.[3] Generally, suspicious timing is not enough for an inference of causation between a protected activity and alleged retaliatory action. *Kidwell v. Eisenhauer*, 679 F.3d 957, 966 (7th Cir. 2012). The more time between the two events, the less likely such an inference can be made. *See id.* In *Kidwell*, the Seventh Circuit found a time gap of two months to be too big to allow an inference of causation. *Id.* at 967. *See id.* at 966 ("[W]e typically allow no more than a few days to elapse between the protected activity and the adverse action."). Here, Plaintiff's "demotion" occurred more than three years after Plaintiff reported Brown's potential illegal conduct. This far exceeds the time gap that the Seventh Circuit has found permissible. Also counseling against an inference of causation, Plaintiff's "demotion" came about two years after Plaintiff was promoted

---

[3] The Court is skeptical of whether Plaintiff's transfer to the Patrol Division was a "demotion" because he maintained his rank of Lieutenant. That said, this issue is not fully briefed nor does it affect the Court's conclusion.

7

to the rank of Lieutenant. *See id.* at 967 (looking at "significant intervening event[s]" that separate an employee's protected activity and the adverse employment action").

### B. Municipal Defendant

Under *Monell*, a municipality may be liable for a violation of a plaintiff's constitutional rights that resulted from an official policy, custom, or practice. *Deeren v. Anderson*, 72 F.4th 229, 237 (7th Cir. 2023) (citing *Monell v. Dep't of Soc. Services*, 436 U.S. 658 (1978)). But to sustain a *Monell* claim, a plaintiff must show a violation of his constitutional rights by an individual defendant. *Id.* (citing *Novoselsky v. Brown*, 822 F.3d 342, 357 (7th Cir. 2016)). Here, because Plaintiff failed to show that any individual Defendant violated his First Amendment rights, "it follows that he cannot avoid summary judgment on his *Monell* claim against [the Town of Chesterton]." *Id.*

## CONCLUSION

The Court hereby GRANTS Defendant's Motion for Summary Judgment [DE 35]. The Court DIRECTS the Clerk of Court to enter judgment against Plaintiff and in favor of Defendants. Plaintiff takes nothing by his Complaint.

SO ORDERED.

ENTERED: July 14, 2025

/s/ GRETCHEN S. LUND
Judge
United States District Court

8